UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

ANDREW DESORMEAUX

    Plaintiff

-v-

KALITTA AIR, LLC

    Defendant

Case No. ___2:23-cv-11159___

Hon. _____

Shinn Legal, PLC
Jason M. Shinn (P64453)
Attorney for Plaintiff
3080 Orchard Lake Rd., Suite C
Keego Harbor, MI 48320
jshinn@shinnlegal.com
P: 248-850-2290

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, Andrew DesOrmeaux, for his Complaint against Kalitta states as follows:

### NATURE OF THE ACTION

1. This lawsuit stems from Defendant's unlawful discrimination and retaliation against its former employee who sought a medical and religious exemption from Defendant's vaccine mandate – exemptions identical or similar to what other similar employers provided.

2.    Plaintiff only sought this accommodation after he had a severe adverse reaction to the first dose of the Pfizer Vaccine. Later, Plaintiff also contracted COVID-19. After recovering from the virus, however, Plaintiff's medical providers confirmed Plaintiff's Covid antibody levels were such that Plaintiff was as or better protected against COVID-19 than people who had received the full vaccination regiment. He was even cleared as "Covid Compliant" as part of his Air Force Qualification status.

3.    Plaintiff asked Defendant for both a medical and religious accommodation to its vaccine mandate and with specific reference to his personal circumstances, e.g., having COVID-19 immunity equivalent or better than those who complied with Defendant's vaccine mandate. But Defendant never even considered these facts in denying Plaintiff's request.

4.    Defendant ignored its obligations under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1991 ("ADA"), and related Michigan law when it discriminated against Plaintiff and issued a generic denial of his request, refused to engage in any interactive dialogue with Plaintiff about his specific circumstances in relation to an accommodation to Defendant's vaccine policy, and offered only to place Plaintiff on unpaid leave followed by a termination after three months for a religious accommodation and 12 months for requesting a medical accommodation.

5.      As discussed below, Plaintiff sues Defendant for violating his personal rights and for wrongful termination and violations under the ADA and Title VII. He also sues Defendant for related claims under Michigan's Michigan's Elliott-Larsen Civil Rights Act and Persons with Disabilities Civil Rights Act.

### THE PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff Andrew DesOrmeaux is an individual, an airline pilot, and former employee to Defendant. Plaintiff worked for Defendant from its principal place of business in Ypsilanti, Michigan. Plaintiff is not a Michigan resident.

4.      Defendant Kalitta Air, L.L.C. ("Kalitta Air" or Defendant) is a Michigan domestic limited liability company.

5.      Defendant's principal place of business is in Ypsilanti, Michigan.

6.      Around July 21, 2022, Plaintiff timely filed charges with the U.S. Equal Employment Opportunity Commission ("EEOC") based on Defendant's disability and religious discrimination and retaliation.

7.      Plaintiff's Discrimination Charge asserted violations of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12102(1), and discrimination based on religion and retaliation under Title VII. *Id*.

8.      The EEOC issued its Right to Sue Letter to Plaintiff on February 16, 2023, which is attached as Exhibit 1.

9.      This Court has jurisdiction of this action under 29 U.S.C. § 2617 and 28 U.S.C. §1331 and 42 U.S.C. § 2000e-5(f)(3).

10.      This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28. U.S.C. § 1367 because they are so related to the federal claims they form part of the same case controversy.

11.      Plaintiff's protected activity and rights he seeks to enforce in this complaint occurred under and derive from Michigan and federal employment statutes.

12.      Plaintiff's rights under such laws are independent of any collective bargaining agreement. See *Smolarek v. Chrysler Corp.*, 879 F.2d 1326 (1989) (In reversing the district court, the Court held because resolution of claims for retaliatory discharge and handicap discrimination would not require interpretation of a collective bargaining agreement, these claims were not preempted);[1] *Valinski v Edison*, 197 F App'x 403, 410 (CA 6, 2006) (Vacating district court's granting of summary judgment because Plaintiff's state law cause of action was not preempted by the LMRA); *Paul v Kaiser Foundation Health Plan of Ohio*, 701 F3d 514, 523

---

[1]  *Cert. denied,* 493 U.S. 992, 110 S. Ct. 539, 107 L. Ed. 2d 537, (U.S. 1989).

(CA 6, 2012) (Reversing judgment on the pleadings[2]); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994).[3]

**13.**    Venue is proper in this Court under 28 U.S.C. §1391 because the claims asserted arose in part or relate to Defendant's business operations in Washtenaw County, Michigan and this is also the main place of business of Defendant Kalitta Air.

**14.**    The amount in controversy is greater than $75,000.00, exclusive of costs and interest.

### Factual Statements

**15.**    Plaintiff incorporates by reference and realleges all the preceding allegations.

**16.**    Plaintiff began his employment with Defendant in May 2018.

**17.**    Plaintff was employed by Defendant as a pilot for Boeing 747 – 400 aircraft. In September 2021, Plaintiff was promoted to Captain.

---

The Court acknowledged the discrimination claim involved the terms and conditions of employment and refusal to reasonably accommodate plaintiff's disability. And the Court acknowledged that such claims implicate an employment relationship created and defined by the CBA. Yet this was not enough to show that resolution of the claim is so "inextricably intertwined" with interpretation of CBA terms as to trigger preemption. *Id.* at 523.

[3] In its discussion of RLA preemption, the *Norris* Court discussed the concept of a minor dispute and noted "we have held that the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA …" And substantive protections provided by state law, independent of whatever labor agreement might govern, are not pre-empted under the RLA. *Hawaiian Airlines v Norris*, 512 US 246 at 256.

**<u>Defendant's Mandatory Vaccine Policy</u>**

18.     Around October 11, 2021, Defendant imposed on Plaintiff and his co-workers a mandatory COVID-19 vaccine requirement. Defendant required Plaintiff to comply with this mandate by December 8, 2021.

19.     Defendant also told Plaintiff and his co-workers that all requests for exemptions must be submitted by October 31, 2021.

20.     Yet before receiving any exemption requests, Defendant told its employees that there would be no accommodations given. Defendant's refusal to grant any such exemptions contradicts other applicable executive orders and other federal mandates, which contained express provisions for religious and medical exemptions, which also follows federal law relative to religious and medical exemptions.

21.     Instead, Defendant told its employees, including Plaintiff, that those who were unable or refused to receive the vaccination because of a disability or sincerely held religious belief would be placed on an unpaid leave effective December 8, 2021.

22.     Around November 2, 2021, Defendant provided each employee who had requested an accommodation, including Plaintiff a form letter Addressed to

"Dear Team Member" that reiterated Defendant was denying all medical and religious accommodations to Defendant's vaccine requirement.

23.     Thus, Defendant's denial of Plaintiff's requested accommodation from its vaccine mandate was not tailored to Plaintiff's request or his circumstances.

24.     Yet with an Orwellian style wordsmithing, Defendant's generic letter also advised its employees seeking a religious accommodation, including Plaintiff, that they would receive unpaid leave of absence starting December 9, 2021, and after 90 days they would be given the choice of voluntarily resigning or be terminated.

25.     Similarly, for those employees asking for a medical accommodation, like Plaintiff, Defendant's gave a generic letter advising they would receive unpaid leave of absence starting December 9, 2021 for 12 months and then be given the choice to resign or be terminated.

26.     Defendant's generic letters for both religious and medical exemptions illustrates Defendant's refusal to engage with Plaintiff in the interactive process under applicable federal and Michigan employment Law to address his specific needs and circumstances.

27.     Further, Defendant's blanket, one-size fits all, accommodation process was arbitrary and inconsistent as applied to Plaintiff and as discussed in the following paragraphs.

## Plaintiff's Medical and Religious Accommodation Request

28.     Plaintiff is a pilot and was an employee to Defendant Kalitta Air.

29.     He is also a member of the Air National Guard.

30.     Mr. DesOrmeaux received the first dose of the Pfizer COVID-19 vaccination in July 2021, which caused him to suffer an extreme severe reaction, including muscle spasms, pain, and swelling. Plaintiff received treatment for this reaction through September 2021.

31.     This adverse reaction was also severe enough for Plaintiff to ask for and receive a medical exemption at times relevant to the issues in this complaint from the Air Force's COVID-19 vaccine requirement.

32.     This exemption also became unnecessary because the Department of Defense later ended its COVID-19 vaccine requirements for its pilots like Plaintiff.

33.     Plaintiff, thus, has a diability that prevented him from safely receiving the COVID-19 vaccination without joepardizing or harming his health.

34.     Around October 31, 2021, Plaintiff completed and signed Defendant's "Religious Accommodation Form." In this form, Plaintiff explained:

   a. His need for a religious accommodation relating to Defendant's Vaccine Requirement;

8

**b.** His need for a medical accommodation relating to Defendant's Vaccine Requirement;

**c.** How his sincerely held religious belief, practice, or observance conflicted with Defendant's Vaccine Requirement;

**d.** His willingness and agreement to provide documentation to support both of the preceding requested accommodations;

**e.** His proposed accommodation and willingness to comply with other reasonable mitigation measures relating to COVID virus.

35. Plaintiff also communicated to Defendant, including its Vice President Peter Sanderlin, Vice President of Operations William Rhodes, Defendant's HR Chief Human Resource Manager Laurie Stockton, and Defendant's Senior HR manager Megan Singh about the details of his requested accommodation. This included providing medical documentation to Defendant confirming he tested positive for Covid antibodies. Plaintiff's doctor concluded around 9/12/2021 that these antibodies showed Plaintiff had continued immunity to the COVID-19 virus and need no further vaccine. Plaintiff also informed Defendant about his adverse reaction to the COVID-19 vaccine, his subsequent treatment of that reaction, and his exemption from the Air National Guard's COVID-19 vaccine requirement.

36.     Defendant's Religious Accommodation Form specfically provided that Defendant has "an obligation to [its] employees to accommodate an employee's sincerely held relgious belief," unless certain threshold conditions are met by Defendant. As discussed in this Complaint, those conditions did not exist.

37.     Defendant refused to engage in any interactive process with Plaintiff about reasonable accommodations that were available and that would have allowed Plaintiff to continue working for Defendant.

38.     Further, when Plaintiff requested his Medical Exemption against Defendant's Vaccine Requirement, Defendant placed him on unpaid leave for one year. Thus, beginning on December 9, 2021 through the present, Plaintiff was put on unpaid leave because he could not comply with Defendant's vaccine mandate for religious and medical reasons.

39.     Also, in response to Plaintiff's requested accommodation, Defendant retaliated against him by taking away access to his company email account. This also had the effect of imparing Plaintiff's ability to communicate with Defendant about his employment and requested accommodations. It also signaled Defendant had no interest in having such communications.

40.     After Plaintff's unpaid leave ends, Defendant will terminate his employment.

**Defendant made no decision based on Undue
Hardship and cannot establish Undue Hardship**

41.     The prohibition against disability discrimination imposes a "duty" on employers to accommodate the sincere religious observances of employees, absent showing "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

42.     An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

43.     Defendant did not base its decision to deny Plaintiff's requested accommodation was because of undue hardship.

44.     Nor can Defendant establish such its decision to deny Plaintiff's requested accommodation was because of undue hardship.

45.     Defendant cannot allege undue hardship when some employees were granted 90 days unpaid leave and other employees were granted 12 months of unpaid leave. Further, Defendant cannot allege undue hardship when it imposed a one-size-fits-all leave policy despite the needs and circumstances of the employee asking for the accommodation.

46.     Further, denial of an "accommodation" to its vaccine mandate and its counter "offering" of unpaid leave of 90 days for religious accommodations or 12

months for medical accommodations with the only choice to resign or be terminated at the end of the leave was intended to coerce Plaintiff into taking the vaccine in violation of his sincerely held beliefs and jeopardizing his health and well-being.

47.     This conclusion is bolstered when considering Defendant first claimed that its policy was required under a federal executive order (EO 14042, "Ensuring Adequate COVID Safety Protocols for Federal Contractors, September 9, 2021) (the "Contractor Mandate").

48.     Yet around November 4, 2021, President Biden extended the deadline of the Federal Mandate to January 2022. Defendant, however, did not extend its vaccine mandate deadline for its employees. Instead, it elected to keep December 8, 2021 as its vaccine mandate compliance date. This also was the last day that aircraft companies were prevented from firing or furloughing employees if they received money from Congress under the Payroll Support Program of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act).

49.     On December 9, 2021, Defendant continued to double-down on its unlawful actions when it informed Plaintiff and other employees that "legal decisions have temporarily prevented the government from seeking to enforce certain vaccination mandates, including those applicable to [Kalitta]. Even so,

Kalitta advised Plaintiff that these legal decisions will not deter Defendant from enforcing its vaccine mandate.

### Defendant's Vaccine Mandate Was an Industry Exception

50.    Additionally, Defendant's "vaccinate or face termination" program departed from substantially every major airline in the U.S. Many other companies, including airlines, readily made accommodations available to their employees.

51.    For example, passenger carriers such as Delta Airlines allowed any employee not wishing to be vaccinated to test once a week at home and to provide Delta with a notice they are negative for COVID-19; no exemption was required.

52.    Similarly, American Airlines and Southwest Airlines, both of which first announced they would have a vaccination or termination policy like Defendant's policy, revised their policies to clarify that they would be firing no employee who refused to get vaccinated. And thos unvaccinated employees continued to work throughout the pandemic with masking and testing measures in place, which just a couple of examples of reasonable accommodations to Defendant's vaccine requirement.

53.    Like Defendant Kalitta, United Airlines also fought to keep unvaccinated pilots and flight attendants on unpaid leave from November 2021 through March 2022. Yet unlike Defendant Kalitta, United Airlines recognized in

allowed its employees accommodations to its vaccine policies, including masks and self testing.

54.    Similar exemptions to vaccine mandates may also be found at major employers involved and in cargo shipping like UPS, FedEx, and Atlas.

**Defendant's Vaccine Mandate Departed from Law and Guidance**

55.    Defendant Kalitta's vaccine mandate and response to accommodation requests contradicts Equal Employment Opportunity Commission ("EEOC") Guidance and other applicable law, because a variety of other accommodation options – free or *de minimis* - were available that would not have caused an undue hardship on Defendant. See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws §§ K.1 & K.2., EEOC (May 28, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (providing EEOC guidance for private employers seeking to issue vaccine mandates).

56.    Additionally Defendant Kalitta's vaccinate or face termination policy strays from the European Union's COVID-19 policies, which considers the following sufficient: (i) a COVID-19 vaccine; (ii) a negative COVID-19 test; or (iii) having recovered from COVID-19. See EU Digital COVID Certificate, EUROPEAN        COMMISSION,        https://ec.europa.eu/info/live-work-travel-

eu/coronavirusresponse/safe-covid-19-vaccines-europeans/eu-digital-covid-certificate_en ("Fully vaccinated persons with the EU Digital COVID Certificate should be exempted from travel-related testing or quarantine 14 days after having received the last dose of a COVID-19 vaccine approved for the entire EU. The same is true for recovered persons with the certificate."). Plaintiff provided Defendant with his European Union certificate of recovery showing he complied with the preceding EU COVID-19 Policy.

57. Thus, Defendant's decision to place Plaintiff on unpaid leave pending termination was not a reasonable accommodation. And it provides strong evidence of the company's discriminatory intent.

## No Unreasonable Safety Issue

58. Plaintiff's requested accommodation from Defendant Kalitta's vaccinate or face termination policy does not create an unreasonable safety issue. For example, data confirms that the odds of catching COVID-19 on an airplane approaches zero, with or without a vaccine. This is because the air filtration systems on board aircraft replace the air continuously and the HEPA filters are highly effective at removing COVID-19 (as shown by the U.S. Department of Defense).

15

59.     Further undercutting Defendant's claim its vaccine requirement was necessary or it could not provide Plaintiff with his requested or other reasonable accommodation, consider these points:

a. Defendant did not require vaccination from any employee from another airline allowed to ride in the jump seat of the aircraft, which is generally in the cockpit with Defendant's crew members.

b. Upon information and belief, Defendant stopped performing any special cleaning of an aircraft after each flight as was the practice during the height of the pandemic.

c. Upon information and belief, Defendant also allows unvaccinated workers to work at its maintenance facility alongside its own vaccinated workers.

d. Also, upon information and belief, Defendant's affiliated company, Kalitta Charters, has no vaccine mandate even though it shares facilities with Defendant and its employees.

e. Upon information and belief, Defendant even imposed its vaccine or face termination policy on its employees who worked remotely or could work remotely.

60.     Taken together, these preceding points and other facts and information to be produced in Discovery shows Defendant's policy was unnecessary or reasonable accommodations other than vaccinate or be terminated were available.

61.     These points also suggest that Defendant used its vaccine mandate to unlawfully discriminate. For example, Defendant used a COVID-19 vaccine mandate to purge employees like Plaintiff whose sincerely held religious and medical needs should have been accommodated. But after denying such requests and ending Plaintiff's employment, Defendant did not mandate booster shots, nor has it imposed a requirement for its employees to be "up-to-date" on vaccines as part of its vaccine mandate policy.

62.     Finally, Defendant's insistence on imposing its vaccine requirement on Plaintiff ignores relevant science about COVID-19, its transmission, and vaccines.

### COUNT I AGAINST DEFENDANT KALITTA – VIOLATIONS OF TITLE VII 42 U.S.C. § 2000E *ET SEQ.* (RETALIATION)

63.     Plaintiff Andrew DesOrmeaux incorporates by reference and realleges all the preceding allegations.

64.     As discussed above, Plaintiff engaged in protected activity when he requested a religious accommodation from Defendant's vaccine mandate.

65.     Around January 2022, Plaintiff also contacted Defendant's HR professionals. Plaintiff offered working with U.S. Embassies abroad to work on

obtaining COVID-19 exemptions (like Plaintiff's EU certificate referenced above) from foreign countries that Defendant Plaintiff may have been required to fly to for Defendant. Defendant refused this offer and told Plaintiff it would handle it. Upon information and belief, Defendant did not handle it and never followed up with this issue.

66. Defendant denied Plaintiff's reasonable accommodation.

67. Defendant also responded to Plaintiff's request for religious accommodation by placing him on unpaid leave followed by terminating his employment.

68. Upon information and belief, Defendant also retaliated against Plaintiff by eliminating his email access, mandating Plaintiff return his company issued iPad, and his ID, and taking other adverse actions against him. As to eliminating Plaintiff's email access and taking his company issued iPad, this eliminated or impaired Plaintiff's ability to communicate with Defendant about his exemptions, work, and accessing company manuals that Plaintiff needed to know. These adverse actions taken against Plaintiff were not taken against Defendant's employees who complied with Defendant's vaccine mandate.

69. Defendant also retaliated against Plaintiff for seeking a religious accommodation by treating Plaintiff and his beliefs worse when it offered him only

three months of unpaid leave unlike 12 months of unpaid leave for medical exemptions to the vaccine mandate.

70. Defendant refused to engage in any interactive discussion and process with Plaintiff about accommodating his sincerely held religious beliefs.

71. Defendant continued to discriminate and retaliate against Plaintiff by not reinstating Plaintiff even as laws and regulations involving Defendant's vaccine mandate were modified, eliminated, or put on hold.

72. Defendant also continued to discriminate and retaliate against Plaintiff by not reinstating Plaintiff even as science and data showed Defendant's vaccine mandate was unnecessary, effective, a best practice, or any combination of the preceding and other employers similar to Defendant abandon similar vaccine requirements or provided accommodations like that requested by Plaintiff.

73. Plaintiff sincerely held religious beliefs and protected activity for the causes of Defendant adverse employment actions.

74. By retaliating against Plaintiff for engaging in protected activity, Defendant violated Title VII. This violation has and continues to harm Plaintiff.

## COUNT II AGAINST DEFENDANT KALITTA – VIOLATIONS OF ADA 42 U.S.C. § 12101, *ET SEQ.* (DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE ADA DISABILITY)

75. Plaintiff Andrew DesOrmeaux incorporates by reference and realleges

all the preceding allegations.

76.   Plaintiff has an actual or record of "disability" as defined in 42 U.S.C. § 12102(1).

77.   Plaintiff's disability was substantially limiting of major life activities, including because it affected Plaintiff's activities such as receiving certain vaccines, breathing, concentrating, and normal bodily functions.

78.   Plaintiff told Defendant of his disability.

79.   Because of his disability, Plaintiff asked Defendant for a reasonable medical combination from Defendant's vaccine mandate.

80.   Defendant was legally required to engage Plaintiff in an interactive process before placing him on involuntary leave and terminating him.

81.   Defendant also refused to consider Plaintiff's particular situation and circumstance. For example, Defendant did not consider that because Plaintiff recovered from COVID-19 and had Covid antibodies along with previously receiving at least one dose of a COVID-19 vaccine that Plaintiff posed no undue COVID-19 risk to Defendant and its employees.

82.   Defendant failed to continually engage in an interactive process with Plaintiff.

83.   Defendant discriminated against Plaintiff because of his "actual or

perceived" disability when he was placed on involuntary leave and later terminated.

84.     By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were knowing, willful, intentional, and reckless and in violation of the ADA.

85.     Defendant's failure to provide medical accommodations has harmed and continues to harm Plaintiff, including by causing him to suffer feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment, and the physical effects associated with it, and will so suffer, as a direct and proximate result of Defendant's discriminatory acts, along with the economic harm imposed on Plaintiff.

86.     For example, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and will so suffer; he has had to employ the services of an attorney to bring this lawsuit and will suffer additional damages, as a direct and proximate result of the violation.

## COUNT III AGAINST DEFENDANT KALITTA – VIOLATIONS OF ADA 42 U.S.C. § 12101, *ET SEQ.* (DISABILITY DISCRIMINATION – RETALIATION)

87.     Plaintiff Andrew DesOrmeaux incorporates by reference and realleges all the preceding allegations.

88.    Plaintiff engaged in protected activity when he requested medical accommodations from Defendant's vaccine mandate.

89.    As described above, Defendant responded by taking an adverse employment action against Plaintiff, including placing him on unpaid leave and telling Plaintiff his employment would be terminated at the end of the unpaid leave if he did not comply with Defendant's vaccine mandate.

90.    Defendant's response to Plaintiff's protected activity is an adverse employment action intended to force Plaintiff to forgo his medical concerns and reasons for not complying with Defendant's COVID-19 vaccine requirement.

91.    Further, Defendant retaliated against Plaintiff by not allowing him to return from unpaid leave or reinstating him when laws, regulations, science, and data, or other industry standards showed Defendant's vaccine mandate was unnecessary or its lack of accommodation was unjustifiable.

92.    Plaintiff's medical disability in protected activity were the causes of Defendant adverse employment action.

93.    By retaliating against Plaintiff for engaging in protective activity, Defendant has violated the ADA.

---

**COUNT IV AGAINST DEFENDANT KALITTA –
VIOLATIONS OF ADA 42 U.S.C. § 12101, *ET SEQ.* (DISABILITY DISCRIMINATION
BASED ON PERCEIVED OR "REGARDED AS" DISABILITY)**

---

94.     Plaintiff Andrew DesOrmeaux incorporates by reference and realleges all the preceding allegations.

95.     Plaintiff requested a reasonable accommodation from Defendant's vaccine mandate.

96.     Defendant refused that accommodation and required Plaintiff to comply with its vaccine mandate or be put on unpaid leave followed by termination.

97.     Thus, Defendant regarded Plaintiff as disabled by assuming and perceiving him to have an impairment, including because Defendant regarded Plaintiff as a health risk to his co-workers without full compliance with Defendant's vaccine mandate.

98.     Defendant did not and cannot prove that Plaintiff posed an undue risk of transmitting COVID-19 to his coworkers.

99.     Even so, Defendant treated Plaintiff as though he were disabled i.e., assuming he could not perform his job safely because he could not comply with Defendant's vaccine mandate.

100.    Defendant discriminated against Plaintiff because of perceived or imagined disability that was not transitory or minor as Defendant believed it affected the major life function of working, breathing, and living free of COVID-19.

101.    By limiting, segregating, and classifying Plaintiff in a manner that hurt

his employment opportunities based on an imagined disability, Defendant engaged in disability-based discrimination in violation of the ADA, which harmed Plaintiff.

## COUNT V AGAINST DEFENDANT KALITTA – VIOLATIONS OF MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

102. Plaintiff Andrew DesOrmeaux incorporates by reference and realleges all the preceding allegations.

103. At all material times, Plaintiff was an employee, and Defendant Kalitta was his employer, covered by the Persons with Disabilities Civil Rights Act (PDCRA), MCL 37.1201 *et seq*.

104. At all material times, Plaintiff performed his job duties in a manner that was satisfactory or better than expected by Defendant.

105. As stated above, Plaintiff experienced severe complications from his initial dose of a COVID-19 vaccine, which required a reasonable accommodation from Defendant's vaccine mandate.

106. Plaintiff's health condition and adverse reaction to vaccines required under Defendant's mandate led Plaintiff to ask Defendant for certain workplace accommodations from Defendant's vaccine mandate.

107. In the alternative, Defendant Kalitta believed Plaintiff was disabled in that he could not safely perform his job duties without complying with Defendant's

24

vaccine mandate.

108. As explained above, Plaintiff's request for an exemption from Defendant's vaccine mandate was a reasonable workplace accommodation, consistent with applicable workplace laws, regulations, science, medical needs, industry standards, or any combination of the preceding.

109. Plaintiff's requested workplace accommodations were refused or ignored by Defendant Kalitta.

110. Thereafter, Defendant Kalitta retaliated against Plaintiff because he asked for the workplace accommodations described above.

111. Defendant Kalitta refused to discuss alternative accommodations or why the requested accommodations were unreasonable.

112. Employers similar to Defendant Kalitta allowed for accommodations from policies or practices like Defendant's vaccine mandate. Or in many other instances, employers similar to Defendant never even imposed a vaccine mandate. In either case, these examples show the use of combinations like Point of requested were reasonable.

113. Defendant Kalitta's handling of accommodation issues like those set forth here shows the arbitrary manner in which Defendant treat their employees in relation compliance with Michigan employment law like the PDCRA.

114.   Plaintiff's condition constitute a disability, as that term is defined under the PDCRA, MCL 37.1103(e).

115.   At the time of his termination, Plaintiff's condition was unrelated to his ability to perform the duties of his job and was unrelated to his qualifications for employment with Defendant Kalitta.

116.   The actions of Defendant Kalitta described here constitute discrimination against Plaintiff under the PDCRA.

117.   Plaintiff objected and otherwise opposed Defendant Kalitta's actions and refusal to accommodate his request for reasonable workplace accommodations. In response, Defendant Kalitta retaliated against Plaintiff after he sought to exercise his rights under the PDCRA.

118.   A motivating factor for Plaintiff's termination stemmed from unlawful disability discrimination by Defendant Kalitta. Specifically, Plaintiff's medical condition, Defendant's perception of his condition, or requested accommodation for the conditions, or a combination of the preceding were a determining factor in its decision to terminate Plaintiff.

119.   The actions of Defendant Kalitta and its agents, representatives, and employees were intentional and disregarded the rights Michigan affords to workers like Mr. DesOrmeaux under the PDCRA.

**120.** As a direct and proximate result of Defendant Kalitta' unlawful discrimination, Mr. DesOrmeaux has sustained injuries and damages, including the loss of earnings, and earning capacity; loss of fringe and pension benefits; mental and emotional distress; humiliation and embarrassment; loss of career opportunities; and loss of the ordinary pleasures of everyday life, including the right to pursue a gainful occupation of choice.

## COUNT IV AGAINST DEFENDANT KALITTA – VIOLATIONS OF MICHIGAN'S ELLIOT LARSEN CIVIL RIGHTS ACT

**121.** Plaintiff Andrew DesOrmeaux incorporates by reference and realleges all the preceding allegations.

**122.** Under Michigan's ELCRA, Defendant is an employer. See MCL 37.2201(a) and Plaintiff is an employee under ELCRA.

**123.** It is unlawful for an employer to "discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of … religion…"

**124.** It is also unlawful for an employer to "[l]imit, segregate, or classify an employee… in a way that deprives or tends to deprive the employee… of an employment opportunity, or otherwise adversely affects the status of an employee… because of religion…"

125.  Plaintiff's religion was a factor that contributed to or made a difference in Defendant's decision to subject him to the wrongful and discriminatory treatment, including unpaid leave and termination.

126.  At all relevant times, Plaintiff was a member of a protected class under ELCRA based on his sincerely held religious belief that prevented him from receiving the COVID-19 vaccine.

127.  Defendant's actions, as described above, constitute religious discrimination in violation of ELCRA.

128.  As a direct and proximate result of Defendant Kalitta' unlawful discrimination, Mr. DesOrmeaux has sustained injuries and damages, including the loss of earnings, and earning capacity; loss of fringe and pension benefits; mental and emotional distress; humiliation and embarrassment; loss of career opportunities; and loss of the ordinary pleasures of everyday life, including the right to pursue a gainful occupation of choice.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Andrew DesOrmeaux asks this Court to enter judgment against Defendant Kalitta, including:

a.  Judgment that Defendant violated Title VII, the ADA, Michigan's ELCRA, Michigan's PDCRA, or any combination of these statutes.

28

**b.** Compensatory damages in whatever amount over $75,000 Plaintiff is entitled for monetary and non-monetary loss.

**c.** An award of back pay and the value of lost fringe benefits and pension benefits, past, and future.

**d.** An award of front pay.

**e.** Exemplary and punitive damages in whatever amount over $75,000 Plaintiff is entitled.

**f.** An award of prejudgment and post judgment interest, costs, and reasonable attorney fees.

**g.** Any other relief appears appropriate at the time of final judgment.

Respectfully submitted,

**Shinn Legal, PLC**

By:   */s/Jason M. Shinn*          Dated: <u>May 16, 2023</u>
       Attorney for Plaintiff

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

ANDREW DESORMEAUX

      Plaintiff

-v-

KALITTA AIR, LLC

      Defendant

Case No. ___2:23-cv-11159___

Hon. _____

---

Shinn Legal, PLC
Jason M. Shinn (P64453)
Attorney for Plaintiff
3080 Orchard Lake Rd., Suite C
Keego Harbor, MI 48320
jshinn@shinnlegal.com
P: 248-850-2290

---

## **JURY DEMAND**

Plaintiff Andrew DesOrmeaux asks for a jury trial on all legal claims and prospective defenses, **except for** those claims based on equity or that intrinsically involve issues of law properly triable by the judge assigned to this case.

      Respectfully submitted,

      **Shinn Legal, PLC**

      By:   */s/Jason M. Shinn*   Dated: May 16, 2023
           Attorney for Plaintiff

4884-4518-8961, v. 1

30

Exhibit A to Complaint:

EEOC Right to Sue Letter

DesOrmeaux v Kalitta Air

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Seattle Field Office**
909 First Avenue, Suite 400
Seattle, WA 98104
(206) 576-3000
Website:  www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 02/16/2023

**To:** Andrew J. DesOrmeaux
6861 W Vandenberg Dr
Wasilla, AK 99623
Charge No: 551-2022-04680

EEOC Representative and email:    MICHAEL YOLLECK
Investigator
michael.yolleck@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 551-2022-04680.

On Behalf of the Commission:

February 16, 2023                                                        for
Date                                                   Elizabeth M. Cannon, Director
                                                       Seattle Field Office

**cc:**
Kalitta Air
c/o Kelsey Law Group, P.C.
George W Kelsey
49710 TYLER ROAD EXT WILLOW RUN AIRPORT
Belleville, MI 48111

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 551-2022-04680 to the District Director at Nancy Sienko, 450 Golden Gate Avenue 5 West PO Box 36025, San Francisco, CA 94102.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

Enclosure with EEOC Notice of Closure and Rights (01/22)

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.