UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANDREW DESORMEAUX.,

        Plaintiff,                    Case No. 1:23-cv-11159

v.                                           Honorable Thomas L. Ludington
                                                               United States District Judge

KALITTA AIR, LLC,

        Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Andrew DesOrmeaux worked as a pilot for Defendant Kalitta Air, LLC when it implemented a vaccine mandate in response to the COVID-19 pandemic. Because Plaintiff had a severe reaction to the first dose of the vaccine and had already contracted COVID-19, he requested medical and religious exemptions from Defendant's mandate. Defendant granted Plaintiff's medical exemption, placed him on unpaid leave for a year, and then terminated his employment. So, in May 2023, Plaintiff sued Defendant for discriminating and retaliating against him based on his purported disability and religious beliefs, in violation of both state and federal law.

But Plaintiff is not the only pilot who sued Defendant Kalitta. Indeed, before Plaintiff filed his complaint, several other former Kalitta employees—including five pilots—filed a putative class action against Defendant, asserting many of the same claims Plaintiff pursues here. So Plaintiff agreed to stay his case as the pilots in that putative class action litigated whether the Railway Labor Act (RLA) precluded their claims. Indeed, Plaintiff agreed the cases were similar and that the Sixth Circuit's preclusion holding would "likely" control in this case, too.

But after the Sixth Circuit held that the RLA precluded the pilots' discrimination claims, Plaintiff changed his tune. Plaintiff now argues that his colleagues' case does not apply to his, and contests summary judgment on his discrimination claims. As explained below, Plaintiff's opposition lacks merit. Plaintiff was subject to the same collective bargaining agreement (CBA) as his fellow Kalitta pilots were. And Plaintiff pursues the same claims that the Sixth Circuit held were precluded by the RLA based on this CBA. So Defendant's Motion for Partial Summary Judgment on Plaintiff's discrimination claims will be granted.

Separately, Defendant seeks to dismiss Plaintiff's remaining Title VII and ADA retaliation claims under Civil Rule 12(b)(6). As explained below, Plaintiff has not sufficiently alleged that he engaged in a protected activity to state a valid Title VII claim. And Plaintiff has not sufficiently alleged causation to state a valid claim under Title VII or the ADA. One way or another, all of Plaintiff's claims must be dismissed.

### I.

### A.

In September 2021, former President Biden issued Executive Order 14042 ("the EO") as part of his administration's efforts to slow the spread of the COVID-19 pandemic. The EO required executive agencies to ensure that all government contracts "include[d] a clause" requiring the private contractor to "comply with all guidance . . . published by the Safer Federal Workforce Task Force" (the "Task Force"). Exec. Order No. 14042, 86 Fed. Reg. 50985 (Sep. 14, 2021). On September 24, 2021, this Task Force required all contractor "covered employees" to receive the COVID-19 vaccine by January 18, 2022. *See* HEIDI M. PETTERS, CONG. RSCH. SERV., IN11803, EXECUTIVE ORDER 14042 REQUIREMENTS FOR COVID-19 VACCINATION OF FEDERAL CONTRACTORS 1 (2021). Covered employees included those who worked in-person at the

contractor's place of business and any remote employees who actively worked—directly or indirectly—on awarded federal contracts. *See id.*

In response to the EO, Defendant Kalitta Air, LLC—a cargo airline contractor based in Ypsilanti, Michigan—issued a vaccine mandate on October 11, 2021. *See* ECF Nos. 1 at PageID.6; 14-1 at PageID.118. Defendant's mandate required all employees to become fully vaccinated by December 8, 2021. ECF No. 1 at PageID.6. But, central to this case, Defendant's mandate allowed religious and medical exemptions. Defendant permitted employees who were unable to receive a vaccination due to a disability or a sincerely held religious belief to request an exemption by October 31, 2021. *Id.* at PageID.6. But Defendants' "exemptions" were allegedly nothing more than an empty promise. Those employees who requested religious exemptions were placed on unpaid leave for three months; those who requested medical exemptions were placed on unpaid leave for one year. *Id.* at PageID.7. Regardless of length, the result after leave was the same: resignation or termination. *See id.*

Plaintiff Andrew DesOrmeaux worked for Defendant as a pilot beginning in May 2018 and was promoted to captain in September 2021, the same month the Biden Administration issued the EO. *See* ECF No. 14-1 at PageID.118. Plaintiff requested both medical and religious exemptions from Defendant's vaccine mandate, for separate but related reasons.

On October 12, 2021, Plaintiff requested a medical exemption for two reasons. First, Plaintiff cited his "extreme severe reaction" to the first dose of the COVID-19 vaccine that he received months earlier. *See* ECF No. 1 at PageID.8 (alleging Plaintiff suffered "muscle spasms, pain, and swelling"); *see also* ECF No. 18-1 at PageID.517 (documenting Plaintiff's receipt of the first dose of the Pfizer COVID-19 vaccine on July 9, 2021). Second, Plaintiff cited a report from

his doctor indicating that he developed antibodies from prior COVID-19 contraction and, thus, "should" be immune. *See id.*; ECF No. 19-1 at PageID.549.

On October 31, 2021—while Plaintiff's medical exemption request "was still pending"—he filed a separate request for a religious exemption. ECF No. 19-1 at PageID.531. Plaintiff's second request largely repackaged his first: his purported "sincerely held religious belief" was that his medical decisions should be based on the "advice of the doctors [his] God . . . put into [his] life." *Id.* So, because Plaintiff's doctors determined he was likely immune and that the second dose of the vaccine would likely harm him, Plaintiff maintained that Defendant "put [him] in [a] position of being forced between [his] sincerely held religious beliefs" and his employment, which required inoculation. *Id.*

In early November 2021, Defendant granted Plaintiff's request for a medical exemption and placed Plaintiff on unpaid leave for one year. ECF No. 14 at PageID.96. Throughout this period, Defendant allegedly deprived Plaintiff of access to his "company email account." ECF No. 1 at PageID.10; *see also* ECF No. 19-1 at PageID.533. Yet, in January 2022, Plaintiff alleges he "contacted Defendant's HR professionals" and requested a specific accommodation: flying only to foreign countries that did not require a vaccinated pilot. ECF No. 1 at PageID.17–18. But Defendant allegedly "denied [this] accommodation." *Id.* at PageID.18. Ultimately, consistent with its alleged practice, Defendant terminated Plaintiff after his unpaid leave period, in early December 2022. *See* ECF Nos. 1 at PageID.21–22; 18 at PageID.472.

In May 2023, Plaintiff sued. *See generally* ECF No. 1. Generally, Plaintiff pursues one Title VII claim, three Americans with Disabilities Act (ADA) claims, and two analogous claims under Michigan law. *Id.* Specifically, in Count I, Plaintiff alleges Defendant retaliated against him for his religious beliefs in violation of Title VII, 42 U.S.C. § 2000e *et seq*. *Id.* at PageID.17–19. In Count

II, Plaintiff alleges Defendant failed to accommodate his disability in violation of the ADA. *Id.* at PageID.19–21. In Count III, Plaintiff alleges Defendant retaliated against him in violation of the ADA. *Id.* at PageID.21–22. And, in Count IV, Plaintiff alleges Defendant violated the ADA by discriminating against him based on a perceived disability: "assuming and perceiving [he was] a health risk to his co-workers without full compliance with Defendant's vaccine mandate." *Id.* at PageID.23–24. Turning to his state claims, in Count V, Plaintiff alleges Defendant violated Michigan's Persons With Disabilities Civil Rights Act (PWDCRA), MICH. COMP. LAWS § 37.1201 *et seq.*, by discriminating against him due to his disability. *Id.* at PageID.24–27. And, in Count VI,[1] Plaintiff alleges Defendant discriminated and retaliated against him for his religious beliefs in violation of Michigan's Elliot Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2201(a). *Id.* at PageID.27–28.

Plaintiff's claims are summarized below:

| Count | Claim |
|-------|-------|
| I | Title VII Religious Retaliation |
| II | ADA Failure to Accommodate |
| III | ADA Retaliation |
| IV | ADA Perceived Disability Discrimination |
| V | PWDCRA Disability Discrimination |
| VI | ELCRA Religious Discrimination |

*See generally* ECF No. 1. Plaintiff concludes his Complaint by requesting compensatory damages, back pay, front pay, exemplary and punitive damages, and a declaration that Defendant violated federal and state law. *See id.* at PageID.28–29.

**B.**

But Plaintiff is not the only pilot who sued Defendant over its vaccine mandate. Indeed, before Plaintiff's suit, several employees—including five pilots—filed a putative class action

---

[1] Count VI is improperly labeled "Count IV" in Plaintiff's Complaint. *See* ECF No. 1 at PageID.27.

against Defendant and its owner—Conrad Kalitta—in this Court, alleging largely the same claims as those Plaintiff pursues here. *See Odell v. Kalitta Air, LLC*, Case No. 1:22-cv-12290 (E.D. Mich. Sep.27, 2022).

In December 2022, the *Odell* Defendants filed a motion to dismiss all claims pursued by the "pilot plaintiffs" as precluded by the Railway Labor Act (RLA). *See Odell*, ECF No. 19. In June 2023, this Court converted that motion to one seeking partial summary judgment and granted it in large part. *See Odell v. Kalitta Air, LLC*, 678 F. Supp. 3d 904 (E.D. Mich.). As Magistrate Judge Patricia T. Morris thoroughly explained in a subsequently adopted report and recommendation:

> Congress passed the RLA to stabilize "labor-management relations" in the railroad and airline industries through a "comprehensive" dispute resolution "framework." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). Under this framework, employers and employees must resolve disputes related to [collective bargaining agreement (CBA)] under a mandatory arbitral scheme. *Id*. (citing 45 U.S.C. § 151a).
>
> The Act divides conflicts over CBAs into two categories. *Id*. In the first category are "major" disputes that relate to "the formation of [CBAs] or efforts to secure them." *Id*. (internal quotation marks omitted) (quoting *Consol. Rail Corp. v. Ry. Labor Executives' Assn*., 491 U.S. 299, 302 (1989)). Disputes regarding the creation of rules regarding "rates of pay" and "working conditions" fall under this category. 45 U.S.C. § 151a. The second category of disputes, known as "minor" disputes, grow[s] "out of the interpretation or application" of existing CBAs. *Id*. These concern "controversies over the meaning of an existing [CBA] in a particular" situation. *Trainmen v. Chicago R. & I.R. Co*., 353 U.S. 30, 33 (1957). In essence, "major disputes seek to create contractual rights" and "minor disputes" seek to "enforce" existing contractual rights. *Consol. Rail Corp*., 491 U.S. at 302; *see also Emswiler v. CSX Transp., Inc*., 691 F.3d 782, 785 (6th Cir. 2012).
>
> Aggrieved parties cannot bring minor disputes directly to a federal or state court. *Emswiler*, 691 F.3d at 785 (citing 45 U.S.C. § 152–53). Instead, minor disputes must be arbitrated before the National Railroad Adjustment Board, over whose decisions the district courts have limited review. *Id*.; *see also Airline Prof'ls Ass'n of the Int'l Bhd. Of Teamsters, Local Union No. 1224 v. ABX Air, Inc*., 274 F.3d 1023, 1028 (6th Cir. 2001). Kalitta argues that the [pilot plaintiffs'] Title VII and ADA claims are minor disputes and therefore must be dismissed as they have not been arbitrated before the Board.

Of course, minor disputes concern the enforcement of rights "grounded in" a CBA, and the [pilot plaintiffs] seek to enforce rights that are created by federal statutes. *Norris*, 512 U.S. at 256. As a general rule, the RLA does not prohibit employees from bringing "independent" causes of action directly to federal court, even if their CBA creates parallel rights that turn on the same facts or conflict. *Id*. at 256–63; *Lingle v. Norge Div. of Magic Chef, Inc*., 486 U.S. 399, 408–10 (1988); *see, e.g*., *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 564–66 (1987).

Yet not all causes of action created by federal or state law are truly independent of a CBA. A state or federal claim that "depend[s] on the interpretation of the CBA" is a minor dispute, even if the cause of action itself is not created by the CBA. *Andrews v. Louisville & Nashville R. Co*., 406 U.S. 320, 324 (1972). For instance, a state-law wrongful termination claim stemming from a contractual right created by a CBA constitutes a minor dispute. *Id*. Similarly, the Sixth Circuit has held that a state-law discrimination claim constituted a minor dispute because it boiled down to a dispute over whether an employer had correctly interpreted and applied a provision of its CBA. *Emswiler*, 691 F.3d at 792–93. At a minimum, therefore, a plaintiff cannot circumvent the RLA's mandatory arbitration process by simply repackaging his or her minor dispute under some other cause of action found under federal or state law. *See Norris*, 512 U.S. at 257–58, 261.

The Sixth Circuit has also explained that whenever an "essential element" of a claim turns on the "interpretation" of a CBA, the claim is a minor dispute and therefore subject to arbitration under the RLA. *See DeCoe v. General Motors Corp*., 32 F.3d 212, 216, 220 (6th Cir. 1994); *see also Emswiler*, 691 F.3d at 792. And that is true even if the employee's cause of action does not merely serve as a vehicle to enforce a right created by the CBA. *See, e.g*., *DeCoe*, 32 F.3d at 217–20 (holding that an employee's claims for intentional infliction of emotional distress and defamation were minor disputes because elements of these claims, which limited the employee's right to relief, turned on provisions of a CBA). The employee's claim is independent of the CBA only if he or she "can prove all of the elements of" the claim without reference to the CBA. *DeCoe*, 32 F.3d at 216 (emphasis added).

Importantly, however, a cause of action does not become a minor dispute merely because a CBA provision may be a "relevant but nondispositive factor" in deciding that claim—the interpretation of the CBA must be able to "conclusively resolve" an essential element of the claim. *Norris*, 512 U.S. at 257–63; *Brown v. Illinois Cent. R.R. Co*., 254 F.3d 654, 668 (7th Cir. 2001). "Moreover, neither a tangential relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract." *DeCoe*, 32 F.3d at 216; *see also Stanley v. ExpressJet Airlines, Inc*., 808 F. App'x 351, 355 (6th Cir. 2020).

Because the RLA precludes any claim that depends on interpretation of the CBA, it is not necessary for a court to find that a CBA provision actually disposes of a cause of action. . . . If a CBA provision could "arguably" dispose of an essential element of a claim, then that claim concerns a minor dispute. *Consol. Rail Corp*.,

> 491 U.S. at 307; *Emswiler*, 691 F.3d at 793; *see Norris*, 512 U.S. at 265. It is up to the National Railroad Adjustment Board—not the district court—to interpret that provision and decide whether it does resolve the employee's claim. *See, e.g.*, *Emswiler*, 691 F.3d at 792–93 (holding that a state-law discrimination claim constituted a minor dispute without ever interpreting the CBA to determine whether it disposed of the claim).
>
> In short, a minor dispute exists where (1) "proof of" a claim "would require interpretation of the CBA" or (2) "the right claimed by" the employee "is created by the" CBA. *Id.* at 792. So because the Pilots' claims stem from Title VII and the ADA, rather than the CBA, their claims are only precluded by the RLA if they require interpretation of the CBA.

*Id.* at 915–17 (footnote omitted) (citations modified).

Against this backdrop, this Court concluded that the RLA precluded the *Odell* pilot plaintiffs' *discrimination* claims under the ADA and Title VII, both of which required the pilots to prove that Kalitta did not provide "reasonable" accommodations for their disabilities and religious beliefs, respectively. *Id.* at 917. But this Court explained that an accommodation is not reasonable if it is "unduly burdensome" and noted Sixth Circuit precedent recognizing undue burden when a proposed accommodation conflicted with a CBA's "seniority system." *Id.* at 917.

In *Odell*, the pilot plaintiff's proposed accommodation did just that. Like Plaintiff here, the *Odell* pilots alleged that Kalitta could have, but failed to, accommodate their disabilities and beliefs by, among other things, limiting their flights to countries that did not require vaccination. *See id.* at 918. But the CBA created a "seniority-based bidding system" in which pilots could bid on preferred flight dates, length, routes, layovers, and aircraft types. *Id.* at 919. "Accordingly, evaluating whether the [pilots' proposed] accommodation imposes an undue burden . . . necessarily entail[ed] interpreting the CBA to determine whether the scheduling adjustments would impact the collectively bargained seniority rights of Kalitta's other pilots." *Id.* Thus, the pilot plaintiffs' discrimination claims were "minor disputes" and precluded by the RLA. *See id.*

On the other hand, this Court concluded that the RLA did not preclude the pilot plaintiffs' *retaliation* claims. *Id.* at 921–24. This Court explained that the crucial element of these claims—Kalitta's motivations—"do[] not depend on the meaning of any term in the CBA." *Id.* at 924. So, this Court held, the pilot plaintiffs' retaliation claims are not "minor disputes and are not subject to arbitration under the RLA." *Id.* After this Court entered partial summary judgment against the pilot plaintiffs and dismissed their discrimination claims, they appealed.

## C.

Back to this case. On August 11, 2023, the Parties filed a joint Motion to Stay pending the pilots' appeal in *Odell*. ECF No. 5. Indeed, because Plaintiff is a pilot subject to the same CBA as the pilots in *Odell*, the Parties expressly agreed that "the *Odell* appeal w[ould] . . . likely be dispositive" on whether the RLA precluded Plaintiff's discrimination claims. *Id.* at PageID.47–48. On August 21, 2023, this Court granted the Parties' joint motion and stayed this case pending the Sixth Circuit's decision in *Odell*. ECF No. 10.

The Sixth Circuit decided *Odell* on July 9, 2024, and affirmed that the RLA precluded the pilot plaintiffs' discrimination—but not retaliation—claims. *See Odell v. Kalitta Air, LLC*, 107 F.4th 523 (6th Cir. 2024). And the Sixth Circuit denied the pilot plaintiff's petition for a rehearing en banc. *Odell v. Kalitta Air, LLC*, No. 23-1703, 2024 WL 3819082 (6th Cir. Aug. 12, 2024).

So on September 13, 2024, this Court lifted the stay and issued a scheduling order in in the above-captioned case. ECF No. 13. Three months later, Defendant filed a "Motion for Partial Summary Judgment and to Dismiss." ECF No. 14. As its title suggests, Defendant's motion is twofold. First, Defendant seeks summary judgment on Plaintiff's federal and state discrimination claims in light of the Sixth Circuit's holding in *Odell*. *See id.* at PageID.99–108. Second, although

- 9 -

Defendant seemingly concedes that Plaintiff's retaliation claims are not precluded by the RLA, it seeks dismissal for failure to state a claim. Each requested relief will be discussed in turn.

## II. Defendant's Motion for Partial Summary Judgment: Discrimination

Defendant first seeks summary judgment on Plaintiff's federal and state discrimination claims—Counts II, IV, V, and VI—because, it argues, each claim is precluded by the RLA. Defendant is correct.

Start with Plaintiff's federal ADA discrimination claims. In Count II, Plaintiff asserts—like the pilot plaintiffs in *Odell*—that Defendant failed to accommodate his disability in violation of the ADA.[2] ECF No. 1 at PageID.21. And Plaintiff—like the pilot plaintiffs in *Odell*—suggests Defendant could have reasonably accommodated his disability by allowing him to fly to specific countries that did not require full vaccination. *See* ECF Nos. 1 at PageID.14–18; 18 at PageID.480–81. But the Sixth Circuit has already concluded that the reasonableness (or undue hardship) of this accommodation "would necessarily require a court to interpret the CBA['s seniority bidding system] to determine whether, and to what extent, senior pilots' bidding preferences would be impacted." *Odell*, 107 F.4th at 532. Plaintiff does not dispute that he is a pilot. Plaintiff does not dispute that he is subject to the same CBA as the pilot plaintiffs in *Odell*. Accordingly, "[b]ecause [Plaintiff's] ADA failure-to-accommodate claim[] cannot be resolved in full without interpreting the CBA, [it is a] minor[] dispute[] and [this Court is] therefore precluded from resolving [it]." *Id.*

The same result for Plaintiff's second ADA discrimination claim. In Count IV, Plaintiff alleges that Defendant "assum[ed he was] a health risk to his co-workers" because he was not fully

---

[2] Notably, Plaintiff does not define his purported disability with any detail. Instead, he merely alleges he "has an actual or record of 'disability' as defined in 42 U.S.C. § 12102(1)" and—parroting this statute—alleges this disability "substantially limit[ed] major life activities [and] affected [his] activities such as receiving certain vaccines, breathing, concentrating, and [having] normal bodily functions." *Id.* at PageID.20.

vaccinated, and discriminated against him because of this "perceived disability," in violation of the ADA. ECF No. 1 at PageID.23–24. But the Sixth Circuit held that this, too, cannot be resolved without eventual consideration of the CBA's seniority bidding system:

> We have stated that "regarded-as" claims do not require an "inquir[y] into 'reasonable accommodations,'" although the "plaintiff still must show that they are 'qualified' for a position." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 n.8 (6th Cir. 2019). However, ruling on the merits of the Pilot Plaintiffs' "regarded as" claims will still eventually require that a decisionmaker evaluate the CBA. If the Pilot Plaintiffs can make out a prima facie case that Kalitta discriminated against them because it regarded them as disabled, then under the *McDonnell Douglas* burden-shifting framework Kalitta will have to proffer a nondiscriminatory reason for its actions, which the Pilot Plaintiffs will then have to demonstrate is pretextual. *See id.* at 319–20. This, subsequently, will entail considering the CBA's relevant provisions surrounding accommodations to evaluate Kalitta's obligations under the CBA in order to determine whether Kalitta's actions are pretexual. The Pilot Plaintiffs' as-regarded claim is therefore precluded by the RLA.

*Odell*, 107 F.4th at 534.

And the same result for Plaintiff's state discrimination claims under the PWDCRA (Count V) and the ELCRA (Count VI). The RLA applies equally to federal and state claims "involving the application or interpretation of a CBA." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 255 (1994). True, the pilot plaintiffs in *Odell* did not pursue state claims. But *Odell* still controls because the state claims that Plaintiff pursues are *identical* to those federal claims the Sixth Circuit held were precluded by the RLA. *See, e.g.*, *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) ("[T]he ELCRA analysis is identical to the Title VII analysis."); *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023) ("The Michigan PWDCRA . . . substantially mirrors the ADA, and these claims are generally analyzed identically." (internal quotations omitted)). Accordingly, both state claims require Plaintiff to prove that Defendant did not "provide reasonable accommodations for [his] religious beliefs or disabilities, respectively." *Odell*, 107 F.4th at 531. But, as explained, in this case as in *Odell*, this analysis cannot be completed without consideration

of the CBA's seniority scheduling system. So the RLA preempts these "minor disputes."[3] *See Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 785 (6th Cir. 2012). In sum, like his former colleagues in *Odell*, Plaintiff's discrimination claims are precluded and preempted by the RLA.

Plaintiff asserts two arguments to the contrary. Both lack merit and are borderline frivolous. First, despite agreeing in late 2023 that he alleged "similar claims" as the pilot plaintiffs in *Odell*, and that the Sixth Circuit's preclusion holding in that case would "likely" control his, Plaintiff now argues that *Odell* "is not applicable" to his discrimination claims. ECF No. 18 at PageID.480. Plaintiff attempts to distinguish himself from the pilots in *Odell* because he—unlike his colleagues—received *one dose* of the COVID-19 vaccine and was allegedly immune through prior exposure. So, Plaintiff suggests, he could permissibly fly to *more* countries than the fully unvaccinated pilots in *Odell* and, thus, his requested accommodations were more reasonable, or less burdensome, for Defendant to provide. Indeed, in response to Defendant's Motion for Summary Judgment, Plaintiff attaches a "compilation of almost 200 countries" he contends he could have permissibly flown to according to those countries' vaccination entry requirements. ECF No. 18 at PageID.481; *see also* ECF No. 19-1 at PageID.577–610.

But this distinction is without a difference. The relevant inquiry—for RLA preclusion purposes—is not *how* burdensome an accommodation may be in light of an existing CBA to render it unreasonable. The inquiry instead is whether analyzing reasonableness—or any other essential element of the claim—would "necessarily entail interpreting the CBA." *Odell*, 107 F.4th at 523. So it matters not that Plaintiff satisfied the requirements to travel to *more* foreign countries than his colleagues in *Odell*. His proposed accommodation—limiting his flight schedule to these

---

[3] Although courts have historically conflated the two terms, the RLA *precludes* federal claims but *preempts* state claims. *Odell*, 107 F.4th at 529 n.6 (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 259 n.6 (1994)).

specific countries—still requires this Court to interpret the CBA's seniority-based bidding scheduling system to assess whether Plaintiff's preferred schedule would impact the collectively bargained rights of senior Kalitta pilots. *See* ECF No. 14-2 at PageID.144, 215–17, 256–57; *see also Odell*, 107 F.4th at 523 (recognizing that Defendant "operates a Bid Seniority list" "pursuant to the CBA" that "allows pilots to submit their preferences for dates and length of travel, routes, layovers, and aircraft type" (internal quotations omitted)).

Relatedly, Plaintiff also argues that, in practice, Defendant does not always abide by the seniority scheduling system outlined in the CBA. *See* ECF No. 18 at PageID.473–74. But the pilot plaintiffs made this same argument in *Odell*, and this Court rejected it. Although this Court recognized that Defendant's practice would be relevant "to determine[] whether [it] . . . violate[d] the CBA," this Court explained that this inquiry is "beside the point." *Odell*, 678 F. Supp. 3d at, 919 (E.D. Mich.). "What matters [instead] is whether the Court can decide" Plaintiff's claims "without interpreting the CBA." *Id.* (internal quotations omitted). As explained, this Court cannot decide Plaintiff's discrimination claims without interpreting the CBA. Thus, Counts II, IV, V, and VI are precluded and preempted by the RLA. To the extent Defendant's motion seeks partial summary judgment on these claims, it will be granted.

### III. Defendant's Motion to Dismiss: Retaliation

Although Defendant concedes that Plaintiff's remaining retaliation claims under Title VII and the ADA—Counts I and III—are not precluded by the RLA, it still seeks to dismiss these claims under Civil Rule 12(b)(6). ECF No. 14 at PageID.108–13. As explained below, Plaintiff's retaliation claims will be dismissed for separate reasons.

A.

Under Rule 12(b)(6), a defendant may seek to dismiss any claim that does not contain allegations to support the plaintiff's recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering motions to dismiss, the court accepts the plaintiff's factual allegations as true and construes the complaint in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Although plaintiffs need not provide "detailed factual allegations" to survive dismissal, mere "labels and conclusions . . . will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]" *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

To succeed on both his Title VII and ADA retaliation claim, Plaintiff must first prove a prima facie case of retaliation by demonstrating that (1) he engaged in a "protected activity," (2) Defendant knew of this activity, (3) Defendant took "adverse employment action" against him or subjected him to "severe or pervasive retaliatory harassment by a supervisor," and (4) there was a "causal connection between the protected activity and the adverse employment action or harassment." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021) (noting Title VII and ADA retaliation claims are "practically identical").

B.

With this standard in mind, Defendant argues that Plaintiff has not alleged any protected activity for the purposes of his *Title VII* retaliation claim. ECF No. 14 at PageID.108–11. And Defendant also argues that Plaintiff has not alleged sufficient causation to succeed on either his *Title VII* or his *ADA* retaliation claim. *Id.* at PageID.111–13. Each argument will be analyzed in turn.

1.

In Count I—Plaintiff's Title VII retaliation claim—Plaintiff alleges he engaged in protected activity "when he requested a religious accommodation from Defendant's vaccine mandate." ECF No. 1 at PageID.17 (emphasis added). But Title VII enumerates only two types of protected activity: "(1) opposing an employer's discriminatory activity or practice made unlawful by the statute or (2) testifying, assisting, or participating in an investigation or proceeding under the statute." *Smith v. COBX Co.*, No. 22-12836, 2023 WL 2578945, at *2 (E.D. Mich. Mar. 20, 2023) (citing 42 U.S.C. § 2000e-3(a)). Plaintiff's request for a religious accommodation does not fall into either category. Indeed, the Sixth Circuit has expressly held that "[a] request for an accommodation does *not* constitute protected activity under Title VII." *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 358 (6th Cir. 2020) (emphasis added). Because Plaintiff has not alleged any protected activity for Title VII retaliation purposes, Count I must be dismissed.

2.

Defendant argues that Count III—Plaintiff's ADA retaliation claim—must be dismissed for a different reason. Although requesting an accommodation is a protected activity for ADA purposes, *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015) (citing *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013), Defendant argues Plaintiff has not shown sufficient causation. This element requires Plaintiff to show "that his . . . protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Cntr. v. Nassar*, 570 U.S. 338, 362 (2013). In other words, Plaintiff must show that, had he not requested a medical exemption, he would not have been placed on unpaid leave or terminated. *See Lucky v. COBX, Co.*, No. 22-12514, 2023 WL 3359607, at *2 (E.D. Mich. May 10, 2023) (citing *Nassar*, 570 U.S. at 346. But Defendant argues this showing is impossible because it notified Plaintiff of

the alleged adverse employment actions—unpaid leave and termination—*before* Plaintiff requested exemptions. ECF No. 14 at PageID.112. And Defendant cites an unpublished decision in which this Court recently dismissed a retaliation claim for similar reasons in similar circumstances.

In *Lucky v. COBX, Co.*, an employee requested a religious exemption from her employer's vaccine mandate. 2023 WL 3359607, at *1 (E.D. Mich. May 10, 2023). Her employer denied her request for an exemption. *Id.* Yet the employee "did not get vaccinated," so her employer suspended her without pay and later terminated her employment. *Id.* The employee then sued her former employer for retaliating against her and argued that her request for an exemption—the purported "protected activity"—caused her suspension and termination. *See id.* But this Court disagreed. Based on her allegations and her employer's mandate, this Court concluded that her *request for an exemption* did not cause her suspension and termination—her *refusal to take the COVID-19 vaccine* did. *Id.* at *3. So this Court dismissed her retaliation claim for lack of causation. *Id.*

Courts across the country have held similarly. *See, e.g.*, *Hunter v. AFGroup Emerging Markets*, No. 22-CV-990, 2023 WL 372204, at *3 (E.D. Wis. Jan. 24, 2023) (noting that the plaintiff's "request for a[n] exemption could not have been [a] but for cause of his suspension and termination because they would have happened all the same given his refusal to get vaccinated"); *Schmidt v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 3:23-CV-00881-FDW-DCK, 2024 WL 3380152, at *4 (W.D.N.C. July 11, 2024) ("On the face of the Complaint, Defendant terminated Plaintiff because he did not comply with the vaccination mandate prior to the [deadline], not because he submitted exemption requests[.]"); *McGinn v. Hawaii Symphony Orchestra*, 727 F. Supp. 3d 915, 946 (D. Haw. 2024) (noting the plaintiff was "placed on indefinite unpaid leave for

failure to comply with Protocols, not because of any protected activity"); *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 670 (N.D. Tex. 2023) ("United's unpaid leave policy preceded Plaintiffs' request for an accommodation, so their request for an accommodation could not have 'caused' the unpaid leave policy to be instituted in retaliation for Plaintiffs engaging in a protected activity."); *Wilder v. Honeywell Fed. Mfg. & Techs., LLC*, No. 4:24-CV-00305-RK, 2024 WL 4567290, at *8 (W.D. Mo. Oct. 24, 2024) (finding no causation when the defendant employer's vaccine mandate—and the consequences of noncompliance—were "implemented and communicated to [p]laintiffs prior to their applications for . . . exemptions"); *Lundstrom v. Contra Costa Health Servs.*, No. 22-cv-06227-CRB, 2022 WL 17330842, at *6 (N.D. Cal. Nov. 29, 2022) (same); *Mullen v. Astrazeneca Pharms., LP*, No. 23-3903, 2023 WL 8651411, at *5 (E.D. Pa. Dec. 14, 2023) (same).

These cases are persuasive. Here, like in the cases cited above, Defendant's vaccine mandate notified its employees that they would be placed on unpaid leave and terminated if they "were unable or refused to receive" the full COVID-19 vaccine—not if they requested an exemption from this vaccine requirement. ECF No. 1 at PageID.6. And, like in the cases cited above, Defendant issued this mandate *before* Plaintiff requested an exemption. *Compare id.* at PageID.6 (noting Defendant issued its mandate on October 11, 2021) *with* ECF No. 19-1 at PageID.531 (noting Plaintiff requested a medical exemption on October 12, 2021, and requested a religious exemption on October 31, 2021). Indeed, like in *Lucky*, Plaintiff "does not allege that, had []he never requested a[n] exemption but still refused to get [fully] vaccinated, []he would have remained employed. Nor does []he allege that, had []he gotten [fully] vaccinated, []he still would have been suspended and terminated[.]" *Lucky*, 2023 WL 3359607, at *3. Because Plaintiff has not alleged that, but for his requested exemptions, he would not have been placed on unpaid leave

or terminated, he has not sufficiently alleged causation to survive dismissal of his remaining retaliation claim.

## C.

But there is another—simpler—reason for the dismissal of Plaintiff's ADA and Title VII retaliation claims: waiver. In response to Defendant's argument that he did not plead a protected activity to state a valid Title VII retaliation claim and did not plead causation to state a valid Title VII or ADA retaliation claim, Plaintiff provided the following two-sentence response:

> [T]he evidence shows that Defendant treated pilots who did not seek an exemption more favorable, including not requiring them to be fully vaccinated, and not putting them on leave when they were not fully vaccinated. Similarly, Defendant discriminated against Plaintiff when he met the entry requirements for flying into countries, but not other employees who had sought no accommodation.

ECF No. 18 at PageID.493–94 (citations omitted).

But this perfunctory argument in no way responds to Defendant's well-researched and well-explained arguments. Indeed, Plaintiff's response conflates the motion-to-dismiss standard with that of summary judgment, and conflates retaliation with discrimination. Accordingly, Plaintiff has waived his opposition to the dismissal of his retaliation claims. *See Damark Marine Towing, LLC v. Molinaro,* No. 23-12293, 2025 WL 1143258, at *3 (E.D. Mich. Apr. 16, 2025) ("The Sixth Circuit has held that when a party fails to respond to a motion or argument therein, the lack of response is grounds for the district court to assume the opposition to the motion is waived, and grant the motion." (internal quotations omitted)); *see also McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotations omitted)).

Because Plaintiff failed to state plausible retaliation claims, and because he waived any argument to the contrary, Counts I and III will be dismissed.

## IV.

Accordingly, it is **ORDERED** that Defendant's Motion for Partial Summary Judgment and to Dismiss, ECF No. 14, is **GRANTED.** Defendant is entitled to summary judgment on Plaintiff's discrimination claims—Counts II, IV, V, and VI. And Plaintiff's remaining retaliation claims—Counts I and III—are dismissed with prejudice for failure to state a claim.

**This is a final order and closes the above-captioned case.**

Dated: August 6, 2025					s/Thomas L. Ludington
							THOMAS L. LUDINGTON
							United States District Judge